INMAN, Judge.
 

 *178
 
 This case concerns the scope of a common law doctrine, named for the seminal case
 
 Corum v. University of North Carolina
 
 ,
 
 330 N.C. 761
 
 ,
 
 413 S.E.2d 276
 
 ,
 
 cert. denied
 
 ,
 
 *650
 

 506 U.S. 985
 
 ,
 
 113 S.Ct. 493
 
 ,
 
 121 L.Ed.2d 431
 
 (1992), which allows a plaintiff to sue the State for a violation the North Carolina Constitution. Such claims, colloquially termed
 
 Corum
 
 claims, may be asserted when a plaintiff has suffered a violation of her state constitutional rights and otherwise lacks an adequate remedy under state law.
 
 Id.
 
 at 782,
 
 413 S.E.2d at 289
 
 . At issue is whether the adequacy of a remedy
 
 *179
 
 depends upon a plaintiff's ability to recover for a particular injury or to recover from a particular defendant. We hold that adequacy depends upon recovery for the plaintiff's injury, without regard to the party from whom recovery may be obtained.
 

 Latonya A. Taylor ("Plaintiff"), individually, and as the administratrix of the estates of Sylvester Taylor and Anglia
 
 [1]
 
 Taylor, and as the Guardian ad Litem of her three minor children, J.T., N.H., and A.H., appeals from the trial court's order granting summary judgment in favor of the Wake County Division of Social Services ("Wake County DSS" or "Defendant") on her claims for ordinary negligence, negligent supervision, negligent infliction of emotional distress, wrongful death, willful and wanton negligence, and denial of due process under Article I, Section 19 of the North Carolina Constitution. Plaintiff argues the trial court erred when it concluded she had an adequate remedy under state law by bringing a claim in the North Carolina Industrial Commission against the North Carolina Department of Health and Human Services ("DHHS"), thereby precluding her from asserting her direct constitutional claim under
 
 Corum
 
 against Defendant.
 

 After careful review, we affirm the trial court.
 

 Factual and Procedural History
 

 This case arises from a tragic series of events, which ended in the deaths of Sylvester and Anglia Taylor, Plaintiff's parents, and the attempted murder of Plaintiff in front her minor children. The undisputed facts establish the following:
 

 In January of 2014, Wake County DSS became involved with the affairs of Plaintiff and her children after reports of domestic violence led Plaintiff to obtain a Domestic Violence Protective Order (the "DVPO") against Nathan Lorenzo Holden ("Holden"), Plaintiff's estranged husband.
 

 The DVPO process began on 2 January 2014, when Plaintiff obtained an Ex Parte Domestic Violence Protective Order (the "Ex Parte Order") following a report that Holden threatened to kill Plaintiff and her minor children. The next day, Kathy Sutehall ("Sutehall"), the Wake County DSS caseworker initially assigned to Plaintiff's case, met with Plaintiff at her residence and discussed the allegations. At the time, Plaintiff was residing with her children at her parents' residence. A hearing for the
 
 *180
 
 DVPO was scheduled for 9 January 2014, but was continued and the Ex Parte Order remained in place. On 21 January 2014, Holden consented to the DVPO, which prohibited him from having any contact with Plaintiff and ordered that he not threaten any member of Plaintiff's family or household.
 

 On 27 January 2014, Sutehall visited one of Plaintiff's minor children's school. As Sutehall was leaving the school, she learned that Holden was outside the school and she asked the school resource officer to escort her safely to her vehicle.
 

 On 28 January 2014, Sutehall conducted a home visit of Plaintiff's residence, where she found that Plaintiff's father, whom Holden had claimed was dangerous, was not a threat to the minor children. Both of Plaintiff's parents signed a "Safety Assessment" at Sutehall's request, indicating that firearms would not be kept in the home.
 

 Two days later, on 30 January 2014, Holden, through his attorney, alleged that there were firearms present at Plaintiff's parents' house, that Plaintiff's father slapped and pulled a gun on one of the minor children, J.T., and as a result, obtained custody of the minor children following an Emergency Ex Parte hearing before a Wake County District Family Court judge. On 2 February 2014, the Wake County Family Court faxed a copy of the Ex Parte Custody Order (the "Emergency Custody Order") to Sutehall. On 10 February 2014, the Wake County Family Court
 
 *651
 
 conducted a hearing concerning the facts alleged in the Emergency Custody Order.
 

 Sometime shortly thereafter, Larna Lea Haddix ("Haddix") took over as Plaintiff's Wake County DSS caseworker. Haddix conducted two home visits with Plaintiff at her residence and one with Holden. Haddix had two additional home visits scheduled with Holden in early April 2014, but Holden was not home when she arrived either time.
 

 On 9 April 2014, Holden went to Plaintiff's residence and shot and killed Plaintiff's parents and shot Plaintiff in front of their children. Holden was later arrested and charged with two counts of murder, assault with a deadly weapon inflicting serious injury with the intent to kill, and attempted first degree murder.
 

 On 4 April 2016, Plaintiff filed a complaint against Wake County DSS in superior court for ordinary negligence, negligent supervision, negligent infliction of emotional distress, and wrongful death. At the same time, Plaintiff filed a complaint, pursuant to the Tort Claims Act, against North Carolina DHHS in the North Carolina Industrial Commission, alleging the same facts and damages as asserted in her suit against Wake
 
 *181
 
 County DSS. Plaintiff later amended her complaint against Wake County DSS to include a claim for willful and wanton negligence and a claim under Article I, Section 19 of the North Carolina Constitution.
 

 On 9 September 2016, Defendant filed its answer, along with a motion to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. On 16 September 2016, Defendant filed a motion for summary judgment. The trial court granted Defendant's motions to dismiss and for summary judgment, concluding:
 

 3.... [T]hat each of the claims of the Plaintiff, with the exception of the claim asserting deprivation of the Plaintiff's constitutional rights, is barred by the doctrine of governmental immunity, and that the Defendant has not waived its immunity, and that therefore, ... each of these claims must be dismissed.
 

 4. With respect to the Plaintiff's claim asserting deprivation of constitutional rights under the North Carolina Constitution, the Court concludes that the Plaintiff has an adequate remedy under state law before the Industrial Commission, and that therefore, ... this claim must also be dismissed.
 

 Plaintiff timely appealed.
 

 Analysis
 

 Plaintiff's appeal raises the question of whether an action against DHHS in the North Carolina Industrial Commission pursuant to the Tort Claims Act is an adequate remedy under state law so that Plaintiff is barred from asserting a
 
 Corum
 
 claim against Wake County DSS in superior court, when both claims arise out of the same facts and seek to recover for the same injuries.
 
 [2]
 
 Plaintiff argues that her claim against DHHS is not an adequate remedy because her claim against DHHS does not provide a remedy
 
 against Wake County DSS
 
 , and, even if she were to recover in the Industrial Commission, her recovery is limited because damages in that forum are capped at one million dollars per person injured and exclude punitive damages. Plaintiff relies upon the North Carolina Supreme Court's decision in
 
 Meyer v. Walls,
 

 347 N.C. 97
 
 ,
 
 489 S.E.2d 880
 
 (1997), which held that a plaintiff may simultaneously bring
 
 *182
 
 an action against DHHS in the Industrial Commission and an action against a county DSS agency in superior court.
 

 Because our precedent following
 
 Corum
 
 defines the adequacy of a remedy as a plaintiff's ability to recover for a particular harm and not as a plaintiff's ability to recover against a particular defendant, and because the
 
 Meyer
 
 decision did not expand the definition of an adequate remedy, we hold Plaintiff's argument is without merit.
 

 We begin our analysis by examining the principles underlying the recognition of state constitutional claims in
 
 Corum
 
 and its progeny. In 1992, the North Carolina Supreme Court issued its decision in
 
 Corum v. University of North Carolina
 
 , which permitted a university faculty member to bring a "direct
 
 *652
 
 cause of action under the State Constitution against [the Vice Chancellor for Academic Affairs] in his official capacity for alleged violations of [the] plaintiff's free speech rights."
 
 330 N.C. at 783
 
 ,
 
 413 S.E.2d at 290
 
 . The Court reasoned that, because freedom of speech is a guaranteed right under the State Constitution, "the common law, which provides a remedy for every wrong, will furnish the appropriate action for the adequate redress of a violation of that right" when no other remedy exists.
 
 Id.
 
 at 782,
 
 413 S.E.2d at 289
 
 . This direct cause of action, the Court held, may not be barred by the doctrine of sovereign immunity because "when there is a clash between these constitutional rights and sovereign immunity, the constitutional rights must prevail."
 
 Id.
 
 at 786,
 
 413 S.E.2d at 292
 
 . In reaching the conclusion that "in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under the Constitution[,]"
 
 id.
 
 at 782,
 
 413 S.E.2d at 289
 
 , the Court relied primarily on two cases:
 
 Sale v. State Highway & Public Works Comm'n
 
 ,
 
 242 N.C. 612
 
 ,
 
 89 S.E.2d 290
 
 (1955), and
 
 Midgett v. N.C. State Highway Comm'n
 
 ,
 
 260 N.C. 241
 
 ,
 
 132 S.E.2d 599
 
 (1963),
 
 overruled on other grounds by
 

 Lea Co. v. N.C. Bd. of Transp.
 
 ,
 
 308 N.C. 603
 
 , 616,
 
 304 S.E.2d 164
 
 , 174 (1983).
 
 Corum
 
 ,
 
 330 N.C. at 781-82
 
 ,
 
 413 S.E.2d at 289-90
 
 .
 

 In
 
 Sale
 
 , the plaintiff sued the State Highway Commission after several of the plaintiff's buildings were destroyed by a fire during the removal and reconstruction process related to a state highway right-of-way project.
 
 242 N.C. at 620
 
 ,
 
 89 S.E.2d at 297
 
 . The Highway Commission contended it could not be sued under statute, in contract, or in tort-the last due to immunity at common law.
 
 Id.
 
 at 620,
 
 89 S.E.2d at 297
 
 . The plaintiff asserted,
 
 inter alia
 
 , a claim under Article I, Section 17 of the North Carolina Constitution,
 
 id.
 
 at 618,
 
 89 S.E.2d at 296
 
 , which at the time, provided in part that "[n]o person shall be ... in any manner deprived of his life, liberty, or property, but by the law of the land[,]"
 

 *183
 
 N.C. Const. of 1868 art. I, § 19.
 
 [3]
 
 The Court, faced with a plaintiff whose constitutional rights had been abridged, and who would receive no just compensation for this violation, fashioned a remedy-a direct constitutional claim against the State-through which the plaintiff was ensured an opportunity to be heard on the merits of his case, and if successful, would receive redress for his injury.
 
 Sale
 
 ,
 
 242 N.C. at 620
 
 ,
 
 89 S.E.2d at 297-98
 
 .
 

 In
 
 Midgett
 
 , the plaintiffs brought suit against the State Highway Commission alleging an unconstitutional taking after the agency constructed a highway altering the natural flow of water and flooding the plaintiffs' property.
 
 260 N.C. at 242-43
 
 ,
 
 132 S.E.2d at 602-04
 
 . Ordinarily under those circumstances, a plaintiff was limited to a statutory remedy that was exclusive when available.
 
 Id.
 
 at 250,
 
 132 S.E.2d at 608
 
 . However, because the plaintiffs' damages accrued after the date by which the plaintiffs could bring a statutory cause of action, the Court held that the plaintiffs had no adequate remedy at law and allowed the plaintiffs to proceed with a direct claim under the State Constitution for just compensation.
 
 Id.
 
 at 249-50,
 
 132 S.E.2d at 607-08
 
 .
 

 A
 
 Corum
 
 claim allows a plaintiff to recover compensation for a violation of a state constitutional right for which there is either no common law or statutory remedy, or when the common law or statutory remedy that would be available is inaccessible to the plaintiff. By allowing an otherwise common law or statutory claim to proceed as a direct constitutional claim, the North Carolina Supreme Court fashioned an avenue to bypass certain defenses such as sovereign or governmental immunity. A
 
 Corum
 
 claim is available to a plaintiff who is able to establish that (1) her state constitutional rights have been violated, and (2) she lacks any sort of "adequate state remedy."
 
 Corum
 
 ,
 
 330 N.C. at 782
 
 ,
 
 413 S.E.2d at 289
 
 . The question left in the wake of
 
 Corum
 
 is: what qualifies as an "adequate state remedy?"
 

 The North Carolina Supreme Court has considered this notion of adequacy in the
 
 *653
 
 context of the interplay between a remedy and sovereign immunity.
 
 Craig v. New Hanover Cty. Bd. of Educ.
 
 ,
 
 363 N.C. 334
 
 ,
 
 678 S.E.2d 351
 
 (2009). In
 
 Craig
 
 , the plaintiff sought to recover monetary damages from the New Hanover County Board of Education (the "Board") and the principal of one of the county middle schools, both in
 
 *184
 
 her official and individual capacities.
 
 Id.
 
 at 335,
 
 678 S.E.2d at 352
 
 . The plaintiff asserted a common law negligence claim and three violations of the North Carolina Constitution: "Article I, Section 15 (right to the privilege of education); Article I, Section 19 (no deprivation of a liberty interest or privilege but by the law of the land); and Article IX, Section 1 (schools and means of education shall be encouraged)."
 
 Id.
 
 at 335,
 
 678 S.E.2d at 352
 
 . This Court held that the doctrine of sovereign immunity
 
 [4]
 
 defeated the plaintiff's common law negligence claim because the Board did not carry insurance that covered such claims, and therefore had not waived its immunity.
 
 Craig v. New Hanover Cty. Bd. of Educ.
 
 ,
 
 185 N.C. App. 651
 
 , 654-55,
 
 648 S.E.2d 923
 
 , 925-26 (2007),
 
 rev'd by
 

 Craig
 
 ,
 
 363 N.C. at 342
 
 ,
 
 678 S.E.2d at 357
 
 . This Court also held that the plaintiff was not permitted to bring his direct constitutional claims because his common law negligence claim was an adequate state remedy.
 
 Id.
 
 at 655-56,
 
 648 S.E.2d at 926-27
 
 .
 

 The North Carolina Supreme Court reversed, holding that the plaintiff's "common law negligence claim [was] not an 'adequate remedy at state law' because it [was] entirely precluded by the application of the doctrine of sovereign immunity."
 
 Craig
 
 ,
 
 363 N.C. at 342
 
 ,
 
 678 S.E.2d at 356-57
 
 . The Court explained that "to be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim."
 
 Id.
 
 at 339-40,
 
 678 S.E.2d at 355
 
 . Because the plaintiff's common law negligence claim was absolutely barred by governmental immunity, the Court allowed the plaintiff to "move forward in the alternative, bring his colorable claims directly under our State Constitution based on the same facts that formed the basis for his common law negligence claim."
 
 Id.
 
 at 340,
 
 678 S.E.2d at 355
 
 . The Court highlighted that, similar to the plaintiff in
 
 Midgett
 
 , "the facts [the] plaintiff allege[d] and the damages he [sought] [were] ... the same under either his common law negligence claim or his direct colorable constitutional claim."
 
 Id.
 
 at 342,
 
 678 S.E.2d at
 
 356 (citing
 
 Midgett
 
 ,
 
 260 N.C. at 251
 
 ,
 
 132 S.E.2d at
 
 608-09 ). The Court concluded that to hold a claim barred by immunity as adequate "would be contrary to our opinion in
 
 Corum
 
 and inconsistent with the spirit of our long-standing emphasis on ensuring redress for every constitutional injury."
 
 Id.
 
 at 342,
 
 678 S.E.2d at 357
 
 .
 

 *185
 
 A year later, the North Carolina Supreme Court addressed the issue of adequacy again in a case involving school suspensions.
 
 Copper v. Denlinger
 
 ,
 
 363 N.C. 784
 
 ,
 
 688 S.E.2d 426
 
 (2010). In
 
 Copper
 
 , the plaintiffs sought various damages against, among others, the Durham Public Schools Board of Education (the "Board"), and the Durham Public Schools Superintendent in both her official and individual capacities.
 
 Id.
 
 at 786,
 
 688 S.E.2d at 427
 
 . The plaintiffs alleged,
 
 inter alia
 
 , that the Board violated the plaintiffs' right to due process of law by denying a student a hearing before issuing a long-term suspension.
 
 Id.
 
 at 786,
 
 688 S.E.2d at 427
 
 . The Court rejected the plaintiffs' argument, noting that
 

 [u]nder [N.C. Gen. Stat.] §§ 115C-45(c) and 391(e), the student here always had the statutory right to appeal; thus, the complaint's allegation that he "was never given" that opportunity fails. As we recently observed in
 
 Craig
 
 , "to be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." 363 N.C. at 339-40,
 
 678 S.E.2d at 355
 
 .
 
 Here, the complaint contains no allegations suggesting that the
 

 *654
 

 student was somehow barred from the doors of either the courthouse or the Board
 
 . Nor does the complaint allege that he exhausted his administrative remedies, or even that it would have been futile to attempt to appeal his suspension to the Board. Thus, under our holdings in both
 
 Corum
 
 and
 
 Craig
 
 ,
 
 an adequate remedy exists at state law to redress the alleged injury
 
 , and this direct constitutional claim is barred.
 

 Id.
 
 at 789,
 
 688 S.E.2d at 429
 
 (emphasis added).
 

 In sum, the North Carolina Supreme Court's definition of adequacy is twofold: (1) that the remedy addresses the alleged constitutional injury,
 
 Copper
 
 , 363 N.C. at 789,
 
 688 S.E.2d at 429
 
 , and (2) that the remedy provides the plaintiff an opportunity to "enter the courthouse doors,"
 
 Craig
 
 , 363 N.C. at 340,
 
 678 S.E.2d at
 
 355 ;
 
 Copper
 
 , 363 N.C. at 789,
 
 688 S.E.2d at 429
 
 . The Court in
 
 Copper
 
 extended the scope of an adequate remedy beyond the doors of the superior court, holding that an administrative remedy-appeal to the local board of education-may satisfy the opportunity requirement under
 
 Craig
 
 .
 
 Copper
 
 , 363 N.C. at 789,
 
 688 S.E.2d at 429
 
 .
 

 We must consider these precedents in the context of the legislative intent of the Tort Claims Act. The General Assembly explicitly granted authority to the North Carolina Industrial Commission to function as a
 
 *186
 
 court for claims within its jurisdiction, providing: "The North Carolina Industrial Commission
 
 is hereby constituted a court for the purpose of hearing and passing upon tort claims
 
 against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State."
 
 N.C. Gen. Stat. § 143-291
 
 (a) (2015) (emphasis added). Plaintiff's assertion that she has been denied access to the "courthouse doors" is unavailing in light of such an unequivocal designation.
 

 Our Court has provided additional guidance regarding the types of remedies deemed adequate to bar the assertion of a
 
 Corum
 
 claim-specifically, those involving administrative remedies and alternative defendants. In
 
 Wilcox v. City of Asheville
 
 ,
 
 222 N.C. App. 285
 
 , 286-87,
 
 730 S.E.2d 226
 
 , 229 (2012), the plaintiff brought suit against the Asheville Police Department and several of its officers, in their official and individual capacities, for an unreasonable use of force that resulted in the plaintiff sustaining two gunshot wounds. The plaintiff's complaint asserted claims for (1) negligence, gross negligence, recklessness, and willful and wanton conduct on the part of the officers for shooting her and on the part of the City of Asheville and the Chief of Police for failing to adequately train and supervise the officers; (2) imputed liability against the City of Asheville for its officers' actions; (3) a violation of the plaintiff's state constitutional rights; and (4) punitive damages for egregiously wrongful, malicious, willful and/or wanton conduct of the individual defendants.
 

 Id.
 

 at 287
 
 ,
 
 730 S.E.2d at 229
 
 . The trial court dismissed all claims against the City of Asheville and the individual defendants in their official capacities on the basis of governmental immunity.
 

 Id.
 

 at 287
 
 ,
 
 730 S.E.2d at 229
 
 . The defendants then filed a motion for summary judgment seeking dismissal of the remaining claims on two grounds: "(1) public official immunity as barring all claims against the [i]ndividual defendants in their individual capacities; and (2) the existence of an adequate state remedy as barring the claims arising under the North Carolina Constitution."
 

 Id.
 

 at 287
 
 ,
 
 730 S.E.2d at 229
 
 . The trial court granted the motion only as far as dismissing the constitutional claims, leaving the plaintiff with her claims against the individual defendants in their individual capacities.
 

 Id.
 

 at 287
 
 ,
 
 730 S.E.2d at 229
 
 .
 

 In reviewing the trial court's partial grant of summary judgment, we answered the question whether, based on the plaintiff having viable claims against the individual defendants in their individual capacities, she could still pursue her constitutional claims against the State under
 
 Corum
 
 .
 

 Id.
 

 at 298
 
 ,
 
 730 S.E.2d at 236
 
 . The plaintiff argued that her claims against the individual defendants were not adequate because it was
 
 *187
 
 uncertain whether those claims were subject to public official immunity-a decision left to the jury-and success on these claims required the plaintiff to prove an additional element than what was required for her other constitutional claims-
 
 i.e.
 
 , the plaintiff would have to prove that the individual defendants "acted with a 'subjective bad motive,' or malice."
 
 *655
 

 Id.
 

 at 301
 
 ,
 
 730 S.E.2d at 238
 
 . Our Court started with the premise that "[d]irect claims against the State arising under the North Carolina Constitution '[are] permitted
 
 only
 
 "in the absence of an adequate state remedy," ' and where an adequate state remedy exists, those direct constitutional claims must be dismissed."
 

 Id.
 

 at 298
 
 ,
 
 730 S.E.2d at 236
 
 (second alteration in original) (emphasis in original) (quoting
 
 Davis v. Town of S. Pines
 
 ,
 
 116 N.C. App. 663
 
 , 675-76,
 
 449 S.E.2d 240
 
 , 247-48 (1994) ). We reasoned that because "adequacy is found not in success, but in chance[,]" and there was "a genuine issue of material fact as to the applicability of public official immunity," the plaintiff "still ha[d] a chance to obtain relief[,]" regardless of the heightened burden.
 

 Id.
 

 at 299-300
 
 ,
 
 730 S.E.2d at 237
 
 . We upheld the trial court's dismissal of the plaintiff's
 
 Corum
 
 claims because her ability to assert claims against the defendants in their individual capacities provided an adequate avenue for redress of her alleged injuries.
 

 Id.
 

 at 302
 
 ,
 
 730 S.E.2d at 238-39
 
 .
 

 Our decision in
 
 Wilcox
 
 is derived from a line of cases from our Court beginning with
 
 Alt v. Parker
 
 ,
 
 112 N.C. App. 307
 
 ,
 
 435 S.E.2d 773
 
 (1993). The plaintiff in
 
 Alt
 
 was pursing,
 
 inter alia
 
 , a claim for the deprivation of his constitutional rights by the State arising from his alleged unlawful restraint and seclusion at a state mental hospital.
 
 Id.
 
 at 310, 317-18,
 
 435 S.E.2d at 775, 779-80
 
 . Our Court held that the plaintiff had two alternative remedies: a common law claim for false imprisonment and "the administrative grievance procedure provided for in the [Department of Human Resources] Rules[,]" under which the plaintiff "could have filed a grievance with the Department of Mental Health."
 
 Id.
 
 at 318,
 
 435 S.E.2d at 779
 
 . The Court rejected the plaintiff's constitutional claim, holding that "[s]ince there is no evidence that [the] plaintiff ever filed a grievance action and received an unfavorable result and since [the] plaintiff had the common law tort action for false imprisonment available to him, we cannot say that [the] plaintiff is without adequate state remedy."
 
 Id.
 
 at 318,
 
 435 S.E.2d at 779
 
 .
 

 We next addressed the adequacy of a state law claim in
 
 Rousselo v. Starling
 
 ,
 
 128 N.C. App. 439
 
 ,
 
 495 S.E.2d 725
 
 (1998), in which the plaintiff sued a State Highway Patrolman in both his official and individual capacities for,
 
 inter alia
 
 , an unreasonable search.
 
 Id.
 
 at 447-48,
 
 495 S.E.2d at 730-31
 
 . The plaintiff argued that "common law immunity would
 
 *188
 
 defeat any common law tort claim that he brought against the State" and that therefore "there is no adequate state law remedy for his claim and ... he is entitled to bring a claim under the North Carolina Constitution."
 
 Id.
 
 at 448,
 
 495 S.E.2d at 731
 
 . Rejecting this argument, our Court held that "the existence of an adequate alternate remedy is premised on whether there is a remedy available to [the] plaintiff for the violation, not on whether there is a right to obtain that remedy from the State in a common law tort action."
 
 Id.
 
 at 448,
 
 495 S.E.2d at 731
 
 . The plaintiff also argued that his common law tort claim against the defendant in his individual capacity was inadequate because the plaintiff would have to show that the defendant "acted with malice, corruption, or beyond the scope of his duty."
 
 Id.
 
 at 448-49,
 
 495 S.E.2d at 731
 
 (citation omitted). Portending our holding in
 
 Wilcox
 
 , we again rejected the plaintiff's argument, declining to hold that he "has no adequate remedy merely because the existing common law claim might require more of him."
 
 Id.
 
 at 449,
 
 495 S.E.2d at 732
 
 .
 

 In
 
 Estate of Fennell v. Stephenson
 
 ,
 
 137 N.C. App. 430
 
 ,
 
 528 S.E.2d 911
 
 , (2000),
 
 rev'd on other grounds by
 
 ,
 
 354 N.C. 327
 
 ,
 
 554 S.E.2d 629
 
 (2001), the plaintiffs argued that a common law claim of false imprisonment on behalf of a deceased victim did not provide an adequate remedy for an unconstitutional detention or seizure because "[a] cause of action for false imprisonment ... does not survive the death of a decedent."
 
 137 N.C. App. at 437
 
 ,
 
 528 S.E.2d at
 
 916 (citing N.C. Gen. Stat. § 28A-18-1(b)(2) (1999) ). Our Court, agreeing with the plaintiffs, held that "[b]ecause the test for whether an adequate state remedy exists is 'whether there is a remedy available to [the] plaintiff for the violation,' [the] [p]laintiffs did not have an adequate state remedy."
 
 Id.
 
 at 437,
 
 528 S.E.2d at 916
 
 (second alteration in original) (quoting
 
 Rousselo
 
 ,
 
 128 N.C. App. at 448
 
 ,
 
 495 S.E.2d at
 
 731 ). The Court noted that "[a]n adequate state remedy exists if, assuming the plaintiff's claim is successful, the remedy would compensate the plaintiff for the
 
 same
 

 *656
 

 injury
 
 alleged in the direct constitutional claim."
 
 Id.
 
 at 437,
 
 528 S.E.2d at 915-16
 
 (emphasis in original) (citing
 
 Rousselo
 
 ,
 
 128 N.C. App. at 447
 
 ,
 
 495 S.E.2d at
 
 731 ).
 

 From these cases it follows that adequacy of a state law remedy depends upon the injury alleged by a plaintiff, rather than upon the party from whom a plaintiff seeks recovery. While the law generally allows plaintiffs to select the defendant(s) from whom they wish to obtain relief, such is not the case when doing so requires the extraordinary exercise of the judiciary's constitutional power necessary to permit a
 
 Corum
 
 claim.
 
 See, e.g.,
 

 Wilcox
 
 ,
 
 222 N.C. App. at 301-02
 
 ,
 
 730 S.E.2d at 238-39
 
 (holding that suit against a defendant
 
 in his individual capacity
 

 *189
 
 is sufficient to preclude the plaintiff from asserting a
 
 Corum
 
 claim against the defendant
 
 in his official capacity
 
 );
 
 Phillips v. Gray
 
 ,
 
 163 N.C. App. 52
 
 , 57-58,
 
 592 S.E.2d 229
 
 , 233 (2004) (holding that a plaintiff's rights were adequately protected by a wrongful discharge claim against a Sheriff in his individual capacity so that dismissal of the plaintiff's free speech claim against the Sheriff in his official capacity was appropriate). So long as a plaintiff has a means of recovering for the alleged constitutional injury, the plaintiff may not use
 
 Corum
 
 to assert a direct constitutional claim against the State as a means of bypassing some fatal defense.
 

 Here, Plaintiff, in her amended complaint against Wake County DSS in superior court, alleges one count each of ordinary negligence, negligent supervision, negligent infliction of emotional distress, wrongful death, and willful and wanton negligence. Following these allegations, Plaintiff asserts her direct claim under the North Carolina Constitution: "In the alternative, the conduct of the Defendant as alleged above constituted a violation of Article I, Section 19 of the North Carolina Constitution." Plaintiff explicitly alleges that "the State Constitutional claims are based on the same facts that formed the basis for the common law negligence claims." Plaintiff's ability to recover for the negligence claims is thereby necessarily related to her ability to assert her direct constitutional claims.
 

 Defendant included Plaintiff's complaint filed against DHHS in the Industrial Commission with its motion for summary judgment. Plaintiff's Industrial Commission complaint asserts claims against DHHS, acting by and through its agent Wake County DSS, for ordinary negligence, negligent supervision, negligent infliction of emotional distress, and wrongful death. Plaintiff's asserted injuries and basis of fact for her Industrial Commission claims are the same as those asserted in her suit against Wake County DSS in superior court.
 

 The adequacy of a state remedy requires only the opportunity to be heard, and if successful to recover for the injuries alleged in the direct constitutional claim. If successful in the Industrial Commission, Plaintiff will be compensated for the same injuries as alleged in her direct constitutional claim. We are, therefore, compelled to hold that Plaintiff has an adequate remedy under state law for the alleged violations of her constitutional rights. Absent Plaintiff establishing that her Industrial Commission claims are impossible, Plaintiff may not assert her direct constitutional claims under
 
 Corum
 
 against Wake County DSS in superior court.
 
 See, e.g.,
 

 Davis
 
 ,
 
 116 N.C. App. at 675-76
 
 ,
 
 449 S.E.2d at 248
 
 (holding that a false imprisonment claim is an adequate remedy because
 
 *190
 
 "[i]f [the] plaintiff's false imprisonment claim is successful,
 
 she will be compensated for the injury she claims in her direct constitutional claim
 
 " (emphasis added) (citing
 
 Alt
 
 ,
 
 112 N.C. App. at 317-18
 
 ,
 
 435 S.E.2d at
 
 779 )). The limited scope of damages available to Plaintiff in the Industrial Commission, as compared to damages available in superior court, results from the General Assembly's determination of what amount of recovery, and what type of recovery, is adequate for claims within the jurisdiction of the Industrial Commission.
 

 Plaintiff argues that this holding is inconsistent with the North Carolina Supreme Court's decision in
 
 Meyer v. Walls
 
 . We disagree. In
 
 Meyer
 
 , the Court addressed whether a county DSS agency was subject to the Tort Claims Act, thereby vesting the North Carolina Industrial Commission with sole jurisdiction over tort claims filed against the agency.
 
 347 N.C. at 104
 
 ,
 
 489 S.E.2d at 884
 
 . The Court drew the distinction that "[a]n agent of the State and a state agency are fundamentally different and are treated differently
 
 *657
 
 by the Tort Claims Act."
 
 Id.
 
 at 107,
 
 489 S.E.2d at 885
 
 . By classifying county DSS agencies as agents of the State-the Department of Human Resources
 
 [5]
 
 -as opposed to state agencies themselves,
 
 [6]
 
 the Court held that the Tort Claims Act does not apply to county DSS agencies and that the trial court's dismissal of a negligence claim for lack of subject matter jurisdiction was improper.
 
 Id.
 
 at 108,
 
 489 S.E.2d at 886
 
 (citations omitted). The Court went on to note that "[a]lthough a plaintiff may not receive a double recovery, he may seek a judgment against the agent or the principal or both."
 
 Id.
 
 at 108,
 
 489 S.E.2d at 886
 
 . The Court explained that
 

 the fact that the Tort Claims Act provides for subject matter jurisdiction in the Industrial Commission over a negligence claim against the State does not preclude a claim against [a county DSS agency] in Superior Court. A plaintiff may maintain both a suit against a state agency in the Industrial Commission under the Tort Claims Act and a suit against the negligent agent or employee in the General Court of Justice for common-law negligence.
 

 Id.
 
 at 108,
 
 489 S.E.2d at
 
 886 (citing
 
 Wirth v. Bracey
 
 ,
 
 258 N.C. 505
 
 , 507-08,
 
 128 S.E.2d 810
 
 , 813 (1963) ).
 

 *191
 
 Plaintiff argues that because the North Carolina Supreme Court held that a plaintiff may maintain both a Tort Claims Act action against DHHS in the Industrial Commission and a common law negligence action against a county DSS agency in the superior court, Plaintiff is permitted to assert her direct constitutional claim under
 
 Corum
 
 as well. This reasoning, however, ignores the finding in
 
 Meyer
 
 that the county agency "waived immunity pursuant to [N.C. Gen. Stat.] § 153A-435(a) through the purchase of liability insurance."
 
 Meyer
 
 ,
 
 347 N.C. at 108
 
 ,
 
 489 S.E.2d at 886
 
 . Our holding today does not preclude Plaintiff from maintaining a negligence action against Wake County DSS in superior court concurrently with her Tort Claims Act action against DHHS in the Industrial Commission if Wake County DSS has waived immunity; such a holding would certainly be contrary to
 
 Meyer
 
 . Rather, our holding goes only so far as to prevent Plaintiff from elevating her negligence claims by way of
 
 Corum
 
 to bypass governmental immunity, when she has an alternate remedy where, if successful, she will be compensated for the injuries she has alleged in her direct constitutional claim.
 

 As instructed by the Court in
 
 Corum
 
 ,
 

 [w]hen called upon to exercise its inherent constitutional power to fashion a common law remedy for a violation of a particular constitutional right, ... the judiciary must recognize two critical limitations. First,
 
 it must bow to established claims and remedies
 
 where these provide an alternative to the extraordinary exercise of its inherent constitutional power. Second, in exercising that power,
 
 the judiciary must minimize the encroachment upon other branches of government
 
 -in appearance and in fact-
 
 by seeking the least intrusive remedy
 
 available and necessary to right the wrong.
 

 Corum
 
 ,
 
 330 N.C. at 784
 
 ,
 
 413 S.E.2d at 291
 
 (emphasis added) (internal citations omitted). In keeping true to this language, it follows that Plaintiff's ability to seek redress for the exact injury underlying her direct constitutional claim prevents us from allowing her to pursue a
 
 Corum
 
 claim. To hold otherwise would run contrary to
 
 Corum
 
 's instruction that we must give way to established remedies and would unnecessarily encroach on the General Assembly's ability to direct actions against the State.
 

 Ultimately, the implementation of the constitutional mechanism used to allow a
 
 Corum
 
 claim to proceed is extraordinary. Plaintiff's Tort Claims Act proceeding is less intrusive than a direct constitutional claim and, if successful, still provides a remedy capable of righting the
 
 *192
 
 alleged constitutional wrong. Accordingly, we hold that Plaintiff's Tort Claims Act action against DHHS is an adequate remedy under state law such that
 
 *658
 
 Plaintiff is unable to purse a direct constitutional claim against Wake County DSS in superior court.
 

 Conclusion
 

 For the foregoing reasons, we conclude that the purpose of allowing direct constitutional claims is to provide plaintiffs the ability to seek redress for particular injuries for which no state law remedy exists, and because Plaintiff has an adequate state law remedy-
 
 e.g.
 
 , a claim under the Tort Claims Act against a State agency for the same injuries complained of in her direct constitutional claim-her direct constitutional claim must be dismissed; accordingly, we affirm the trial court's order.
 

 AFFIRMED.
 

 Judges BRYANT and DAVIS concur.
 

 [1]
 

 We note the spelling of Anglia Taylor differs between the trial court's order from which Plaintiff appeals-"Angela"-and the complaint and briefs before this Court-"Anglia". We adopt the spelling from the complaint and briefs.
 

 [2]
 

 Plaintiff does not challenge the trial court's ruling that her common law negligence claims are barred by the doctrine of governmental immunity, and has therefore abandoned any arguments to this issue on appeal.
 

 [3]
 

 The 1868 North Carolina Constitution was revised in 1970. The applicable Article and Section under the current North Carolina Constitution is Article I, Section 19, which echoes the same language: "[n]o person shall be ... in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. of 1970 art. I, § 19.
 

 [4]
 

 The North Carolina Supreme Court rightly distinguished that the Board was a county agency, and therefore "the immunity it possess[ed] [was] more precisely identified as governmental immunity[.]"
 
 Craig
 
 , 363 N.C. at 335 n.3,
 
 678 S.E.2d at
 
 353 n.3 (citing
 
 Meyer
 
 ,
 
 347 N.C. at 104
 
 ,
 
 489 S.E.2d at
 
 884 ). Similarly here, Wake County DSS is a county agency and any immunity it possesses is more properly termed governmental immunity. However, as in
 
 Craig
 
 , this distinction is immaterial in the present case.
 

 [5]
 

 Now the Department of Health and Human Resources. N.C. Gen. Stat. § 143B-138.1 (2015).
 

 [6]
 

 The Court reiterated its holdings in
 
 Vaughn v. N.C. Dep't of Human Resources
 
 ,
 
 296 N.C. 683
 
 , 690,
 
 252 S.E.2d 792
 
 , 797 (1979), and
 
 Gammons v. N.C. Dep't of Human Resources
 
 ,
 
 344 N.C. 51
 
 , 54,
 
 472 S.E.2d 722
 
 , 723 (1996), "that the county departments of social services were agents of DHR."
 
 Meyer
 
 ,
 
 347 N.C. at 107
 
 ,
 
 489 S.E.2d at 885
 
 .