Univ. of N.C. at Chapel Hill v. Vesta Therapeutics, Inc., 2022 NCBC 54.

STATE OF NORTH CAROLINA

ORANGE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 970

THE UNIVERSITY OF NORTH
CAROLINA AT CHAPEL HILL,

        Plaintiff,

v.

VESTA THERAPEUTICS, INC. and
PHOENIXSONGS BIOLOGICALS,
INC.,

        Defendants.

**ORDER AND OPINION
ON PARTIAL MOTION TO
DISMISS COUNTERCLAIMS**

1.     This case arises out of a contractual dispute between the University of North Carolina at Chapel Hill ("the University") and two biotechnology companies, Vesta Therapeutics, Inc. ("Vesta") and PhoenixSongs Biologicals, Inc. ("PhoenixSongs"). The University has moved to dismiss three counterclaims asserted by Vesta and PhoenixSongs. (ECF No. 45.) For the reasons given below, the Court **GRANTS** the motion.

> *Robinson, Bradshaw & Hinson, P.A., by Cary B. Davis, Preetha Suresh Rini, and Brendan P. Biffany, and Marla S. Bowman of the Office of University Counsel at the University of North Carolina at Chapel Hill, for Plaintiff University of North Carolina at Chapel Hill.*
>
> *Ekstrand & Ekstrand LLP, by Robert C. Ekstrand, and Christian Levine Law Group, by James W. Christian and Nicole J. Newman, and Bondurant, Mixson & Elmore LLP, by John E. Floyd, for Defendants Vesta Therapeutics, Inc. and PhoenixSongs Biologicals, Inc.*

Conrad, Judge.

# I.
# BACKGROUND

2.     The Court does not make findings of fact on a motion to dismiss.  The following background assumes that the allegations of the counterclaims are true.

3.     For nearly 20 years, Vesta has held a license to certain stem cell technology owned by the University.  Vesta initially held an exclusive worldwide license for all applications.  In 2013, the parties agreed to divide the license rights so that Vesta has an exclusive license for clinical applications and PhoenixSongs has an exclusive license for nonclinical applications.  (*See* Countercl. ¶¶ 13–15, ECF No. 36.)

4.     Throughout this period, Vesta has also funded related research at the University.  This research is governed by two sponsored research agreements—one from 2010 and the other from 2018—and associated amendments.  These agreements include provisions regarding funding amount and timing, research scope, record keeping, handling of confidential material, publication rights, intellectual property protections, and more.  (*See* Countercl. ¶¶ 24–27.)

5.     Disputes arose in 2019.  Early that year, the University invoiced Vesta for a funding installment of over $800,000.  When Vesta did not pay, the University filed suit for breach of the 2018 sponsored research agreement.  The University also asserted claims against Vesta and PhoenixSongs for breach of their license agreements based on allegations that they had failed to commercialize the underlying stem cell technology.  (*See generally* Am. Compl. ECF No. 8.)

6.     Vesta and PhoenixSongs counterclaimed.  They allege, in over 200 paragraphs, that the University is at fault.  In short, the University allegedly failed

to perform the required research, destroyed evidence of its inactivity, disclosed confidential information to a foreign government, improperly disposed of tissue samples and other materials, and interfered with commercialization efforts. Based on these allegations, Vesta and PhoenixSongs assert counterclaims for breach of the license agreements and sponsored research agreements, breach of the implied covenant of good faith and fair dealing, a taking of property without compensation in violation of the North Carolina Constitution, negligent misrepresentation, and negligence. (*See, e.g.*, Countercl. ¶¶ 140–76, 185–207.) Vesta and PhoenixSongs have stipulated that their other counterclaims—including fraud and misappropriation of trade secrets—are barred by sovereign immunity and have voluntarily dismissed them. (*See* Notice of Voluntary Dismissal, ECF No. 44.)

7. Pending is the University's partial motion to dismiss. It seeks to dismiss the constitutional and negligence-based counterclaims but not the contract-based counterclaims. On 23 August 2022, the Court held a hearing at which all parties were represented. The motion is ripe for determination.

## II.
## ANALYSIS

8. The University's motion rests on multiple grounds. It is partly a motion to dismiss for failure to state a claim and partly a motion to dismiss based on principles of sovereign immunity.

9. A motion to dismiss for failure to state a claim "tests the legal sufficiency of the [counterclaim] complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation marks omitted). Dismissal is proper when "(1) the complaint on its

face reveals that no law supports the . . . claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the . . . claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted). In deciding the motion, the Court must treat all well-pleaded allegations as true and view the facts and permissible inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019). The Court may also consider documents, such as contracts, that are the subject of the complaint. *See, e.g.*, *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001).

10. A valid assertion of sovereign immunity is not merely a defense to liability; it is an "absolute and unqualified" immunity from suit altogether. *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 534 (1983) (emphasis omitted). When a motion to dismiss is based on sovereign immunity, it must be decided as a threshold jurisdictional issue (though whether it "is a matter of personal or subject matter jurisdiction" remains unsettled). *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 327–28 (1982).

### A. Constitutional Counterclaim

11. The Court begins with the constitutional counterclaim. Article I, Section 19 of the North Carolina Constitution provides in part, that "[n]o person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." This is better known as the Law of the Land Clause. Vesta and PhoenixSongs

contend that the University, a state agency, violated the Law of the Land Clause by taking tangible and intangible property without just compensation.

12.   The University argues that Vesta and PhoenixSongs have an adequate remedy at law—their contract counterclaims—and therefore may not assert a direct constitutional claim.  Vesta and PhoenixSongs respond that the University is "merely fighting the facts alleged in the complaint" and that their state-law remedies are not adequate "by reason of immunities or otherwise."  (Defs.' Opp'n Br. 9, ECF No. 50.)

13.   Direct constitutional claims against the State and its agencies are allowed in narrow circumstances.  The claimant must plead and prove "that (1) her state constitutional rights have been violated, and (2) she lacks any sort of 'adequate state remedy.'"  *Taylor v. Wake Cnty.*, 258 N.C. App. 178, 183 (2018) (quoting *Corum v. Univ. of N.C.*, 330 N.C. 761, 782 (1992)); *see also Deminski v. State Bd. of Educ.*, 377 N.C. 406, 2021-NCSC-58, ¶¶ 16–18 (2021).  A remedy is adequate if it addresses the alleged constitutional injury and gives the claimant "at least the opportunity to enter the courthouse doors."  *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 340 (2009); *see also Copper v. Denlinger*, 363 N.C. 784, 789 (2010); *Taylor*, 258 N.C. App. at 185.

14.   It is clear from the face of their pleading that Vesta and PhoenixSongs have an adequate remedy under state law.  Their contract counterclaims address the constitutional injury because every alleged taking is also an alleged breach of the relevant contracts.  These include the University's disclosure of confidential information (*compare* Countercl. ¶ 155, *with* ¶¶ 167–68); its destruction of tissue

samples and specialized research mice (*compare* Countercl. ¶¶ 60–61, *with* ¶ 169); and its decision to allow third parties to freely use a certain culture medium for growing stem cells (*compare* Countercl. ¶ 156, *with* ¶ 170). Indeed, Vesta and PhoenixSongs expressly allege that the University "took" the "exclusive license rights" granted by the contracts. (Countercl. ¶ 167.) The contractual and constitutional injuries are one and the same. *See Carl v. State,* 192 N.C. App. 544, 556–57 (2008) (reversing denial of motion to dismiss constitutional claim based on alleged "taking" of contractual right).

15. The contract counterclaims also allow Vesta and PhoenixSongs to enter the courthouse doors. When the State or an agency makes a contract, it "implicitly consents to be sued for damages on the contract in the event it breaches the contract." *Smith v. State*, 289 N.C. 303, 424 (1976). Thus, sovereign immunity does not bar the contract counterclaims. That sovereign immunity led Vesta and PhoenixSongs to dismiss various tort counterclaims is immaterial.

16. To be sure, Vesta and PhoenixSongs made a conclusory allegation that existing state-law remedies are not adequate. (*See* Countercl. ¶ 165.) But the Court need not accept conclusory allegations. *See, e.g.*, *Wray v. City of Greensboro*, 370 N.C. 41, 46 (2017).

17. They also contend that dismissal before discovery is premature. In some cases, discovery may be necessary to evaluate the adequacy of a remedy. Here, though, the pleading itself demonstrates that the counterclaims for breach of contract are available and address the alleged constitutional injury.

18. Because Vesta and PhoenixSongs have not sufficiently alleged that they lack an adequate remedy under state law, the Court grants the motion to dismiss their constitutional claim.

### B. Negligence & Negligent Misrepresentation

19. Next, the Court turns to the counterclaims for negligence and negligent misrepresentation. Vesta and PhoenixSongs allege that the University breached its duty of care by reporting false and incomplete information, failing to perform research in the manner required by the sponsored research agreements, and disposing of tissue samples and other materials.

20. The University moves to dismiss both counterclaims. It contends that the State Tort Claims Act requires aggrieved parties to bring negligence-based claims against the State or its agencies before the North Carolina Industrial Commission. *See* N.C.G.S. § 143-291(a). In their opposition brief, Vesta and PhoenixSongs contend that the Act's grant of jurisdiction over these claims to the Industrial Commission is not exclusive and does not divest the superior courts of jurisdiction.

21. Our appellate courts have answered this question. "Because an action in tort against the State and its departments, institutions, and agencies is within the exclusive and original jurisdiction of the Industrial Commission, a tort action against the State is not within the jurisdiction of the Superior Court." *Guthrie*, 307 N.C. at 539–40. Put another way, negligence-based claims against the State or its agencies may "be pursued in the Industrial Commission but not in superior court." *Kawai Am. Corp. v. Univ. of N.C.*, 152 N.C. App. 163, 167 (2002).

22. There are limited exceptions. By rule, a litigant may assert third-party claims against a state agency in superior court "[n]otwithstanding the provisions of the Tort Claims Act." N.C. R. Civ. P. 14(c). Likewise, our Supreme Court has held that "the State may be held liable as a coparty under Rule 13(g) for purposes of [a crossclaim for] contribution and indemnification to the same extent that the State may be held liable as a third-party defendant under Rule 14(c)." *Selective Ins. Co. v. NCNB Nat'l Bank*, 324 N.C. 560, 564 (1989).

23. At the hearing, Vesta and PhoenixSongs argued for the first time that these exceptions also apply to *counterclaims*. But they cite no rule, statute, or case that supports that position. And the Rules of Civil Procedure refute it. In contrast with Rule 14(c)'s express modification of the State Tort Claims Act for third-party claims, Rule 13(d) stresses that "[t]hese rules shall not be construed to enlarge *beyond the limits fixed by law* the right to assert counterclaims or to claim credit against the State of North Carolina or an officer or agency thereof." N.C. R. Civ. P. 13(d) (emphasis added). The limits fixed by law include the State Tort Claims Act. This means that a claimant may not assert a tort claim against the State as a counterclaim in superior court but must instead bring that claim before the Industrial Commission. Federal courts have construed the analogous Federal Rule of Civil Procedure 13(d) in exactly the same way when dealing with counterclaims against the United States. *See, e.g.*, *United States v. Davis*, 2019 U.S. Dist. LEXIS 224635, at *17–18 (C.D. Ill. July 15, 2019) (citing Fed. R. Civ. P. 13(d) and holding that counterclaims were

statutorily required to be brought in Court of Federal Claims not federal district court).

24. Accordingly, the Court grants the motion to dismiss the negligence-based claims. Having dismissed these claims on jurisdictional grounds, the Court need not and does not decide whether they are barred by the economic loss rule, as the University also contends.

## III.
## CONCLUSION

25. For all these reasons, the Court **GRANTS** the University's motion to dismiss. The counterclaim for violations of the North Carolina Constitution is **DISMISSED** with prejudice. The counterclaims for negligence and negligent misrepresentation are **DISMISSED** without prejudice.

**SO ORDERED**, this the 21st day of September, 2022.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases