HIGH ROCK LAKE ASSOCIATION INC. AND MARY DAVIS v. NORTH CAROLINA ENVIRONMENTAL MANAGEMENT COMMISSION, JOHN W. THOMAS, JR., P. GREER JOHNSON, EDWIN C. BAKER, OWEN R. BRAUGHLER, PAUL DICKSON, ERSKIN L. HARKEY, JR., ROBERT W. HESTER, JAMES E. HARRINGTON, JR., LOUIS J. MARCHETTI, JEROME E. SHIFFERT, W. E. STRAFFORD, D. J. WALKER, JR., AND JAMES C. WALLACE

No. 7810SC179

(Filed 20 February 1979)

1. **Waters and Watercourses § 3; Administrative Law § 4— fact finding hearing—no order entered—no judicial review**

    The use of evidence from a fact finding informal hearing to determine whether to initiate a proceeding to declare the Yadkin River Basin a capacity

use area and to subject its water users to a permit-letting system was purely within the defendant's discretion, and plaintiff riparian landowners were not entitled to judicial review of such hearing; moreover, even if such hearing did fall under G.S. 143-215.13(d), plaintiffs were not entitled to judicial review, since no order was issued by defendant which in turn could have adversely affected plaintiffs.

2. **Administrative Law § 5— fact finding hearing—no contested case—no judicial review**

   A fact finding hearing conducted by defendant to consider whether to initiate proceedings to declare the Yadkin River Basin a capacity use area was no more than the G.S. 143-215.13(c) rule making type procedure and was not a contested case, and plaintiffs were thus not entitled to judicial review under the Administrative Procedure Act, G.S. 150A-43 *et seq.* Moreover, plaintiffs failed to exhaust their administrative remedies, since they could have sought a declaratory ruling pursuant to G.S. 150A-17 which would have been subject to judicial review under G.S. 150A-43, but they failed to do so.

3. **Administrative Law § 2; Declaratory Judgment Act § 3— no right to adjudicatory hearing—failure to exhaust administrative remedies—no declaratory judgment**

   The trial court did not err in dismissing plaintiffs' complaint for declaratory judgment which prayed the court to declare the Yadkin River Basin a capacity use area, or in the alternative, to remand the case for further proceedings consistent with their alleged procedural right to an adjudicatory hearing, since there was no right to an adjudicatory hearing in this matter, and since plaintiffs failed to exhaust administrative remedies before seeking to have the Yadkin River Basin declared a capacity use area.

APPEAL by plaintiffs from *Godwin, Judge.* Order entered 30 November 1977 in Superior Court, WAKE County. Heard in the Court of Appeals 8 January 1979.

Plaintiffs are an association of riparian property owners on High Rock Lake and an individual riparian landowner on the Yadkin River in Davie County. The defendant is the Environmental Management Commission of the Department of Natural and Economic Resources and is empowered with applying the Water Use Act of 1967, G.S. 143-215.11 *et seq.* Duke Power Company, which is not a party to this action, is proposing to construct a nuclear power plant to be located on the Yadkin River upstream from High Rock Lake near the confluence of Dutchman's Creek. Duke proposes to withdraw up to 72,000,000 gallons per day of water from the river to be used in the operation of a closed cycle cooling system utilizing nine mechanical draft wet cooling towers. Duke and the Commission initiated an investigation into

the environmental effects of the proposed water use. The plaintiffs became involved in the matter because of their concern that the water withdrawal would have an adverse effect on the river basin by contributing to further what they perceive as an already high degree of eutrophication.

The Environmental Management Commission of the Department of Natural and Economic Resources, due to public concern over the effect of the proposed water use on downstream water quality and quantity, directed that an investigation of the proposed water use be undertaken by the Department of Natural and Economic Resources and that a recommendation be prepared on whether the Yadkin River Basin should be declared a "capacity use area".[1] The Department recommendation was against such a declaration. The Commission, nevertheless, held a public meeting 6 September 1976, to consider the question of declaring a "capacity use area". As a result of the public meeting, "the Commission decided to hold two public hearings to consider whether a capacity use [area] should be declared and/or an order issued to Duke pursuant to N.C.G.S. 143-215.13(d)."[2]

On 27 October 1976, the Environmental Management Commission conducted a hearing, after notice, which permitted written and oral testimony and questions to the chairman. The hearing record was held open for 30 days for further written testimony. The testimony taken at the hearings was unsworn, no cross-examination was allowed, and no hearing officer was appointed.

The plaintiffs in this action filed a petition for review and a complaint for declaratory judgment on both procedural and

---

1. "A 'capacity use area' is one where the Environmental Management Commission finds that the aggregate uses of ground water or surface water, or both, in or affecting said area (i) have developed or threatened to develop to a degree which requires coordination and regulation, or (ii) exceed or threaten to exceed, or otherwise threaten or impair, the renewal or replenishment of such waters or any part of them." G.S. 143-215.13(b).

2. "The Environmental Management Commission may conduct a public hearing pursuant to the provisions of G.S. 143-215.4 in any area of the State, whether or not a capacity use area has been declared, when it has reason to believe that the withdrawal of water from or the discharge of water pollutants to the waters in such area is having an unreasonably adverse effect upon such waters. If the Environmental Management Commission determines, pursuant to hearing, that withdrawals of water from or discharge of water pollutants to the waters within such area has resulted or probably will result in a generalized condition of water depletion or water pollution within the area to the extent that the availability or fitness for use of such water has been impaired for existing or proposed uses and that injury to the public health, safety or welfare will result if increased or additional withdrawals or discharges occur, the Environmental Management Commission may issue an order: . . .

(2) Prohibiting any person from constructing, installing or operating any new well or withdrawal facilities having a capacity in excess of a rate established in the order; but such prohibition shall not extend to any new well or facility having a capacity of less than 10,000 gallons per day." G.S. 143-215.13(d).

substantive grounds. Plaintiffs allege that not only were they denied statutory and constitutional procedural rights, but that the Commission's Resolution No. 76-41, refusing to declare a capacity use area or to issue an order pursuant to G.S. 143-215.13(d), was contrary to competent, material, and sustantial evidence. The petition and complaint were dismissed by the Superior Court upon defendant's motion. From entry of the order dismissing the petition, plaintiffs appeal.

*Attorney General Edmisten, by Assistant Attorney General Daniel C. Oakley, for the State.*

*Pfefferkorn and Cooley, by William G. Pfefferkorn and David A. Wallace, for plaintiff appellants.*

MORRIS, Chief Judge.

The petition for judicial review and the complaint for declaratory relief were dismissed by the Superior Court on the ground that the court had no jurisdiction to review the matter. The narrow question before this Court is whether the petition sufficiently alleges grounds for judicial review of the Commission's action.

## Judicial Review

[1] The plaintiffs assert two grounds for judicial review. First, plaintiffs argue that the hearing by the Commission on 27 October 1976 constituted a formal proceeding to determine whether the Commission should, without declaring the Yadkin River Basin a "capacity use area", issue an order restricting the withdrawal of water. A hearing before issuing such an order is required by G.S. 143-215.13(d) and is subject to specific adjudicatory-like procedures as set forth in G.S. 143-215.4. Judicial review of the order entered in such a proceeding is available, pursuant to the provisions of G.S. 143-215.5, to "[a]ny person who is adversely affected by an order of the Environmental Management Commission issued pursuant to [G.S. 143-215.13(d)]".

On the other hand, the Commission asserts that the proceeding served two functions. It served as a procedure pursuant to G.S. 143-215.13(c) to determine whether the Yadkin River Basin should be designated a capacity use area and its water users sub-

High Rock Lake Assoc. v. Environmental Management Comm.

jected to a permit-letting system. Plaintiffs do not contest this proposition. Second, and the major point of dispute, the Commission asserts that the hearing also served the function of a general information gathering tool to have injected public participation at a state of decision-making generally reserved to staff participation. This participation was, the Commision asserts, to aid it in determining whether to initiate proceedings which would ultimately involve proposing the issuance of a permit under G.S. 143-215.13(d) and a hearing of an adjudicatory nature. The Commission contends that they had not yet reached the stage in the decision-making process that necessitated formal hearing required by "13(d)".

The Commission's characterization of the proceeding as an informal stage of the decision-making process with respect to the "13(d)" considerations appears accurate. We perceive no evil in allowing the Commission to utilize the evidence presented at that hearing in determining whether it should initiate proceedings pursuant to G.S. 143-215.13(d). The Commission's use of that public participation can be likened to the district attorney's evaluation of all facts available to him in determining whether criminal prosecution should be pursued. Our courts must refrain from the impulse to subject essentially discretionary matters to the rigors of administrative procedural requirements whether under an organic act or the Administrative Procedure Act, G.S. Chapter 150A. As noted by Professor Daye in his article "North Carolina's New Administrative Procedure Act: An Interpretive Analysis", 53 N.C.L. Rev. 833 (1975), "A degree of informality may be essential if agencies are to accomplish the missions assigned to them with flexibility and expedition." *Id.* at 847. Furthermore, assuming *arguendo* that the hearing should have fallen under G.S. 143-215.13(d), the statute limits those who may appeal from the agency action:

"§ 143-215.13. . . .

(d) . . .

Any person who is adversely affected by an order of the Environmental Management Commission issued pursuant to this subsection may seek judicial review of the order pursuant to the provisions of G.S. 143-215.5; and the order shall not be stayed by the appeal."

The foregoing provision operates as a statutory limitation on the standing of parties interested in or affected by the action to seek judicial review. Therefore, based on a plain reading of the statute, since no order was issued by the Commission which in turn could have adversely affected the plaintiffs, plaintiffs are not entitled to judicial review under the foregoing statutory provision.

[2]  Plaintiffs' alternative ground for seeking judicial review is based upon the judicial review provisions of the North Carolina Administrative Procedure Act, G.S. Chapter 150A, Art. 4. The right of judicial review under that article is determined by the following language:

> "§ 150A-43. *Right to judicial review.* — Any person who is aggrieved by a final agency decision in a *contested case*, and who has exhausted all administrative remedies made available to him by statute or agency rule, is entitled to judicial review of such decision under this Article, unless adquate procedure for judicial review is provided by some other statute, in which case the review shall be under such other statute. Nothing in this Chapter shall prevent any person from invoking any judicial remedy available to him under the law to test the validity of any administrative action not made reviewable under this Article." (Emphasis supplied.)

Plaintiffs contend that "the matters heard on October 27, 1976 constitute a 'contested case'" entitling plaintiffs to judicial review under Chapter 150A, Art. 4.

The term "contested case" is defined in the statute as follows:

> "§ 150A-2. Definitions.— . . .
>
> (2) 'Contested case' means any agency proceeding, by whatever name called, wherein the legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for an adjudicatory hearing. Contested cases include, but are not limited to proceedings involving rate-making, price-fixing and licensing. Contested cases shall not be deemed to include rule making, declaratory rulings, or the award or denial of a scholarship or grant."

It is apparent from the statute, therefore, that the determinative question is whether plaintiffs are entitled "by law" to an ad-

judicatory hearing. We note initially that by organic statute, to the extent they seek review of the capacity use area proceeding, the plaintiffs are entitled only to a hearing under G.S. 143-215.13(c) in the nature of a rule making hearing such as under Article 2 of the Administrative Procedure Act, G.S. 150A-9 *et seq.* Nevertheless, our inquiry goes beyond statutory law. If the fundamental concepts of due process entitle plaintiffs to an adjudicatory hearing, then the matters considered at the hearing are required "by law" to be determined by an adjudicatory hearing and thus are entitled to judicial review under G.S. 150A-43.

In order to determine whether due process entitles the plaintiffs to an adjudicatory hearing, it is helpful first to consider what legal rights, duties, or privileges of the plaintiffs are affected. As noted above, the plaintiffs are riparian landowners concerned with the quality of water in the Yadkin River Basin. The declaration of the Yadkin River Basin as a capacity use area would entitle the Commission to issue regulations to be applied to the area concerning the use of water, G.S. 143-215.14, and would require certain water users to apply for permits before utilizing the waters. G.S. 143-215.15 and G.S. 143-215.16. The benefit to plaintiffs and other persons utilizing the resources of the Yadkin River Basin is a general one. They receive the indirect benefit (or perhaps direct burden) of regulation intended to conserve the water resources and to maintain conditions which are conducive to the development and use of the resources. *See* G.S. 143-215.12. The impact of the decision whether to declare an area as a "capacity use area" has a general effect on the entire class of persons who utilize the resource.

A determination of whether an adjucation is required by due process requires an evaluation of the nature of the Commission's decision. Where the decision rests on findings of a general nature and not upon "individual grounds", the determination need not be adjudicative. *See Bi-Meltallic Inv. Co. v. State Board of Equalization,* 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915). Our decision involves an application of the historic legal distinction between rule making and adjudication, *i.e.* legislative and adjudicative determinations. Professor Daye, in his article on the North Carolina Administrative Procedure Act, offers this guide for distinguishing rule making from adjudication:

"The touchstone for distinguishing adjudication from rulemaking is that adjudication involves a specifically named party and a determination of particularized legal issues and facts with respect to that party. Rulemaking, by contrast, involves general categories or classes of parties and facts and policies of general applicability." Daye, supra, 53 N.C.L. Rev. at 868.

The leading treatise on administrative law offers this distinction:

"Adjudicative facts are the facts about the parties and their activities, businesses, and properties. Adjudicative facts usually answer the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case. Legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law and policy and discretion." 1 K. Davis, Administrative Law Treatise § 7.02 at p. 413 (1958).

Both the Commission and plaintiffs quote the following distinction made by Justice Holmes between the judicial-adjudicatory inquiry and the legislative inquiry:

"A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power." *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150, 158 (1908).

Further elaboration of the due process concepts involved in determining the necessity of an adjudicative hearing is unnecessary. We find it abundantly clear from the foregoing authorities that the procedure employed by the Commission was no more than the G.S. 143-215.13(c) rule making type procedure and thus plaintiffs are not entitled to judicial review under G.S. 150A-43 *et seq.*

Insofar as plaintiffs assert that their interest in an order pursuant to G.S. 143-215.13(d) entitles them to judicial review under the Administrative Procedure Act, we reiterate our previously

expressed view that the use of evidence from the hearing to consider whether to initiate a .13(d) proceeding was purely within the discretion of the Commission. There were no legal rights, duties, or privileges determined by using that information. The information was part of a preliminary inquiry, prerequisite to a decision to initiate a formal ".13(d)" hearing. *See Miller v. Alcoholic Beverages Control Commission,* 340 Mass. 33, 162 N.E. 2d 656 (1959); *see generally Daye, supra,* 53 N.C.L. Rev. at 871.

We find it appropriate to note that plaintiffs apparently were not without other available avenues to seek review of the proceeding to determine whether a capacity use area should be declared in the Yadkin River Basin. Plaintiffs were entitled to seek a declaratory ruling pursuant to G.S. 150A-17. Such a ruling would then be subject to judicial review under G.S. 150A-43. Therefore, not only have plaintiffs not presented a "contested case", it appears they have failed to satisfy a preliminary condition to judicial review — the exhausting of available administrative remedies. *See* G.S. 150A-43.

## Declaratory Judgment

[3] Plaintiffs contend that the trial court erred in dismissing their complaint for declaratory judgment which prayed the court to declare the Yadkin River Basin a capacity use area, or in the alternative, to remand the case for further proceedings consistent with their alleged procedural right to an adjudicatory hearing. Therefore, the question which the plaintiffs present to this Court is whether they are entitled to judicial review of an administrative decision outside the procedures specifically provided in the Water Use Act of 1967 or the Administrative Procedure Act.

The Administrative Procedure Act apparently does not preclude entirely the possibility of judicial review by use of the declaratory judgment act or other procedures outside the Act. "Nothing in this Chapter shall prevent any person from invoking any judicial remedy available to him under the law to test the validity of any administrative action not made reviewable under this Article." G.S. 150A-43. Furthermore, in applying comparable declaratory action and administrative procedure statutes, the declaratory judgment has been recognized as an effective tool for

judicial review of administrative decisions under appropriate circumstances in the federal courts. *See generally* 3K. Davis, Administrative Law § 23.04; 5 Megines, Stein, Gruff, Administrative Law § 46.03; *see e.g., Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed. 2d 681 (1967). Similarly, in a very recent decision, our Supreme Court has recognized, implicitly at least, that the declaratory judgment remedy might be available under appropriate circumstances to review an administrative decision where the parties present an actual or real existing controversy. *See Adams v. Dept. of N.E.R.* and *Everett v. Dept. of N.E.R.*, 295 N.C. 683, 249 S.E. 2d 402 (1978). The Court in that case determined that plaintiffs' contention that the designation of their land as an "interim" area of environmental concern by the Coastal Resources Commission amounted to an unconstitutional taking of their land was premature and thus not justiciable. *Id.*

We find in the case at bar that plaintiffs have failed to present an appropriate case for declaratory judgment. Insofar as the plaintiffs seek a declaration of their asserted right to an adjudicatory hearing, we need not determine whether the trial court erred in dismissing the action for lack of jurisdiction. It has already been determined above in our consideration of the plaintiffs' right to judicial review that there is no right to an adjudicatory hearing in this matter. Assuming *arguendo* that the trial court erred in dismissing the action, it would be fruitless to reverse and remand the matter for determination of these same procedural rights. The law is not so impractical.

[2]   Furthermore, plaintiffs' prayer for a declaration of the Yadkin River Basin as a capacity use area does not arise in a posture ripe for judicial determination. The Commission's action is properly reviewable, as we noted above, by first seeking a declaratory ruling (G.S. 150A-17) and then presenting the matter for review pursuant to G.S. 150A-43. Such procedures must be followed to protect the agencies from judicial interference until a concrete decision has been reached. Once the agency has issued a declaratory ruling with respect to its action, the courts are better able to review the ruling according to established criteria which appropriately take into account agency expertise. *See* G.S. 150A-51 (scope of review).

For the foregoing reasons, the decision of the trial court dismissing the action must be

Affirmed.

Judges MARTIN (Harry C.) and CARLTON concur.