Halikierra Cmty. Servs. LLC v. N.C. Dep't of Health & Hum. Servs., 2021 NCBC 18.

STATE OF NORTH CAROLINA

WAKE COUNTY

HALIKIERRA COMMUNITY
SERVICES LLC; DWAYLON
WHITLEY; and MICHAEL SCALES,

Plaintiffs,

v.

NORTH CAROLINA DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, Division of Health
Benefits; MEDICAL REVIEW OF
NORTH CAROLINA, INC. d/b/a The
Carolinas Center for Medical
Excellence; KAY COX, in her
individual capacity; and PATRICK
PIGGOTT, in his individual capacity,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 6058

**ORDER AND OPINION
ON MOTIONS TO DISMISS**

1. This case involves allegations of abuse of authority by the North Carolina Department of Health and Human Services ("DHHS") and two of its officials, Kay Cox and Patrick Piggott. The plaintiff, Halikierra Community Services LLC ("Halikierra"), was once one of North Carolina's largest in-home Medicaid healthcare providers. The company shuttered its business in August 2018 after being audited and ultimately suspended by DHHS. Halikierra insists that it did nothing wrong and that it was the target of a malicious campaign by Cox and Piggott with help from a private auditor, Medical Review of North Carolina, Inc. ("CCME"). Halikierra and its two principals have sued DHHS, CCME, Cox, and Piggott for violations of state law and the North Carolina Constitution.

2. The defendants vigorously deny the allegations. All have filed motions to dismiss. For the following reasons, the Court **GRANTS in part** and **DENIES in part** each motion.

> *Ralph Bryant Law Firm, by Ralph T. Bryant, Jr., for Plaintiffs Halikierra Community Services LCC, Dwaylon Whitley, and Michael Scales.*
>
> *Joshua H. Stein, Attorney General of the State of North Carolina, by John H. Schaeffer and Rajeev K. Premakumar, North Carolina Department of Justice, for Defendants North Carolina Department of Health and Human Services, Division of Health Benefits, Kay Cox, and Patrick Piggott.*
>
> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by J. Mitchell Armbruster and Grace Anthony Gregson, for Defendant Medical Review of North Carolina, Inc. d/b/a The Carolinas Center for Medical Excellence.*

Conrad, Judge.

I.
BACKGROUND

3. The following background assumes that the allegations of the complaint are true.

4. Halikierra was formed by a pair of former college roommates, Dwaylon Whitley and Michael Scales. (*See* Compl. ¶ 1, ECF No. 5.) For nearly a decade, it provided in-home healthcare services to Medicaid beneficiaries under a license issued by DHHS. (*See* Compl. ¶¶ 4, 12.) At its peak, the company employed nearly 600 workers. (*See* Compl. ¶ 14.)

5. The events that led to this case began in June 2018 when DHHS placed Halikierra on prepayment review. (*See* Compl. ¶ 23.) Prepayment review—which often follows an allegation of fraud, for example—entails an audit of selected claims

presented by a provider for reimbursement to ensure that they comply with governing laws. *See* N.C.G.S. § 108C-7(a). The review is termed "prepayment" because the provider has no right to receive reimbursement for claims under review until completion of the audit. (*See* Compl. ¶ 24.) This is a significant departure from the usual payment process. Ordinarily, Halikierra received reimbursement within five business days of billing DHHS. (*See* Compl. ¶¶ 16–18.) Once placed on prepayment review, Halikierra's revenue dried up, even though it continued to render Medicaid-eligible services. It needed loans to cover expenses and payroll, which exceeded $700,000 per month. (*See* Compl. ¶¶ 19, 54–56.)

6. According to Halikierra, DHHS had no lawful basis to place it on prepayment review. Rather, the decision was orchestrated by Cox and Piggott. (*See* Compl. ¶ 22.) Cox is a nurse consultant for the Program Integrity Unit; Piggott is the associate director for investigations for the Office of Compliance and Program Integrity. (*See* Compl. ¶¶ 7, 9.) As alleged, they "personally detested" Halikierra due to its size and success and set out to destroy it. (Compl. ¶¶ 20, 186.)

7. To carry out their scheme, Cox and Piggott solicited help from CCME, the company tasked with conducting the audit on DHHS's behalf. (*See* Compl. ¶¶ 28, 29.) At their request, CCME falsely reported to DHHS that Halikierra employed forty-five convicted felons. (*See* Compl. ¶¶ 33–35.) Halikierra insists that it had only a handful of employees with felony records and that it did nothing wrong by hiring them. (*See* Compl. ¶¶ 36, 37, 42.) Inflamed by the report, though, DHHS raided Halikierra's offices. (*See* Compl. ¶¶ 43, 44.)

8.　In August 2018, shortly after the raid, DHHS claimed to have found credible allegations of fraud and suspended all payments to Halikierra.  (*See* Compl. ¶¶ 45–47.)  Suspension meant that Halikierra would receive no reimbursements for any claims, not just those under prepayment review.  (*See* Compl. ¶¶ 54, 57.)  It was a death knell.  Unable to meet its financial obligations, Halikierra laid off its employees and closed its business.  (*See* Compl. ¶ 58.)

9.　Meanwhile, the prepayment review continued.  In September 2018, CCME submitted its audit report, which gave Halikierra a passing grade.  (*See* Compl. ¶¶ 64, 65.)  A few days later, DHHS's Medicaid Investigations Division refused to open a fraud investigation, citing insufficient evidence.  (*See* Compl. ¶ 66.)  At that point, Piggott allegedly urged CCME to redo its report with falsified data.  (*See* Compl. ¶ 67.)  Halikierra believes that CCME had a strong incentive to do so because its compensation from DHHS is based on the number of claims it flunks.  (*See* Compl. ¶ 162.)  As a result of Piggott's urging, CCME fudged the data and produced a new report, which showed that Halikierra had failed the review by a wide margin.  (*See* Compl. ¶¶ 68–71.)  False report in hand, Piggott went back to the Medicaid Investigations Division, but it again concluded that there was insufficient evidence of fraud.  (*See* Compl. ¶ 72.)

10.　By this point, an internal review of Halikierra's suspension was under way.  In proceedings before a DHHS hearing officer, Cox represented that the Program Integrity Unit had credible allegations of fraud.  Neither Cox nor Piggott informed the hearing officer that the Medicaid Investigations Division had twice declined to

open a fraud investigation due to insufficient evidence. (*See* Compl. ¶¶ 74–78.) The hearing officer upheld the suspension, and Halikierra was forced to appeal to the Office of Administrative Hearings ("OAH"). (*See* Compl. ¶¶ 79, 83.) In January 2019, while the appeal was pending, DHHS conceded that it had insufficient evidence of fraud and rescinded the suspension. (*See* Compl. ¶¶ 83–86.)

11. Alleging that DHHS destroyed its business through targeted and groundless administrative actions, Halikierra filed this suit. It asserts two claims against DHHS under the North Carolina Constitution for violations of substantive due process and equal protection rights. It also asserts a claim for conspiracy in restraint of trade under N.C.G.S. § 75-1 against Cox and Piggott, in their individual capacities; claims for fraud and unfair or deceptive trade practices under N.C.G.S. § 75-1.1 against CCME; and claims for civil conspiracy and punitive damages against Cox, Piggott, and CCME. Whitley and Scales are named plaintiffs for purposes of the section 75-1.1 claim and the claim for conspiracy in restraint of trade.

12. The defendants deny these allegations. Three motions to dismiss are pending. CCME has moved to dismiss all claims against it. (ECF No. 15.) DHHS has moved to dismiss the constitutional claims. (ECF No. 26.) And Cox and Piggott have moved to dismiss the civil conspiracy and punitive damages claims but not the claim for conspiracy in restraint of trade. (ECF No. 28.)

13. The motions have been fully briefed, and the Court held a hearing on 18 November 2020. After the hearing, the Court requested and received additional

briefing on several issues potentially affecting subject matter jurisdiction. (*See* ECF No. 42.) The motions are now ripe for resolution.

## II.
## LEGAL STANDARD

14. Some of the issues presented are jurisdictional in nature. Subject matter jurisdiction is the "indispensable foundation upon which valid judicial decisions rest, and in its absence a court has no power to act." *In re T.R.P.*, 360 N.C. 588, 590 (2006). Lack of subject matter jurisdiction necessitates dismissal at any stage of litigation. *See* N.C. R. Civ. P. 12(b)(1), 12(h)(3); *Azure Dolphin, LLC v. Barton*, 2017 NCBC LEXIS 90, at *13 (N.C. Super. Ct. Oct. 2, 2017), *aff'd*, 371 N.C. 579 (2018). When assessing its jurisdiction, the Court "may consider matters outside the pleadings." *Harris v. Matthews*, 361 N.C. 265, 271 (2007) (citations omitted).

15. Other issues before the Court are raised under Rule 12(b)(6) for failure to state a claim. A Rule 12(b)(6) motion "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation marks omitted). The motion should be granted only when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted).

16. In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences in the light most favorable to the nonmoving party. *See Sykes v. Health Network Sols.,*

*Inc.*, 372 N.C. 326, 332 (2019); *CommScope Credit Union v. Butler & Burke, LLP*, 369 N.C. 48, 51 (2016). But the Court need not accept as true any "conclusions of law or unwarranted deductions of fact." *Wray v. City of Greensboro*, 370 N.C. 41, 46 (2017) (citations and quotation marks omitted). The Court also may consider documents "attached to and incorporated within [the] complaint" but may not consider matters outside the complaint. *Bucci v. Burns*, 2018 NCBC LEXIS 37, at *8 (N.C. Super. Ct. Apr. 25, 2018) (citation and quotation marks omitted).

## III.
## ANALYSIS

17. At the hearing, the Court inquired whether Whitley and Scales have standing to pursue the asserted claims. In their supplemental brief, Whitley and Scales have consented to the dismissal of their claims. (*See* Pls.' Suppl. Br. 1, ECF No. 50.) That leaves Halikierra as the sole plaintiff. The Court begins with its constitutional claims against DHHS.

### A. Constitutional Claims Against DHHS

18. Halikierra asserts that DHHS violated its substantive due process and equal protection rights under the North Carolina Constitution. Both claims are based on the allegation that the decision to place Halikierra on prepayment review was arbitrary. (*See* Compl. ¶¶ 95, 132, 134.) The complaint, though muddled at times, alleges two distinct theories. One is that the statute governing prepayment review, section 108C-7, is vague and therefore facially unconstitutional. (*See, e.g.*, Compl. ¶¶ 98, 100, 101.) The other theory is that DHHS singled out Halikierra, imposing

prepayment review without supporting evidence in "a spiteful effort" to punish it. (Compl. ¶¶ 118, 119, 134, 140.)

19. DHHS has moved to dismiss the claims under Rules 12(b)(1) and 12(b)(6). Its opening brief centered on the facial challenge to section 108C-7 but said little about the allegations that DHHS arbitrarily targeted Halikierra. (*See, e.g.*, DHHS Br. in Supp. 2–4, ECF No. 27.) In response, Halikierra withdrew the facial challenge. (*See* Opp'n to DHHS Mot. 1, ECF No. 33.) Then, at the hearing, DHHS raised new arguments related to the prerequisites for asserting a direct constitutional claim for damages, prompting the Court to invite supplemental briefing on these and related issues.

20. The piecemeal briefing, and the withdrawal of the facial challenge to section 108C-7, have produced a confusing jumble of arguments. The Court has endeavored to fairly construe each side's arguments and the allegations in the complaint.

## 1. *Proper Defendants for Constitutional Claims*

21. DHHS first argues that Halikierra should have asserted its facial challenge to section 108C-7 against the General Assembly, as the statute's author, and its representatives. *See* N.C.G.S. § 120-32.6(b) (stating that the Speaker of the House of Representatives and the President Pro Tempore of the Senate are "necessary parties" in cases involving the "constitutionality of an act of the General Assembly"); *see also* N.C. R. Civ. P. 19(d). According to DHHS, it "merely enforces the law" and is therefore not a proper defendant. (DHHS Reply Br. 1, ECF No. 36.)

22. This argument is moot because Halikierra has dropped its facial challenge. What remains is the allegation that DHHS acted arbitrarily when it placed Halikierra on prepayment review. To the extent DHHS argues that Halikierra should have asserted that theory against a different defendant, it is mistaken. As the alleged wrongdoer, DHHS is the proper defendant. *See, e.g., Craig v. New Hanover County Bd. of Educ.*, 363 N.C. 334, 342 (2009) (involving constitutional claims against a county board of education); *Monarch Tax Credits, LLC v. N.C. Dep't of Revenue*, 2021 NCBC LEXIS 9, at *21–26 (N.C. Super. Ct. Jan. 25, 2021) (involving constitutional claims against the North Carolina Department of Revenue).

2. *Jurisdiction of the Industrial Commission*

23. Next, DHHS argues that the Court lacks jurisdiction because these claims must be brought in the North Carolina Industrial Commission. (*See* DHHS Br. in Supp. 6–7.) The Industrial Commission has jurisdiction over negligence claims against state agencies. *See* N.C.G.S. § 143-291(a); *see also Frazier v. Murray*, 135 N.C. App. 43, 47–48 (1999). But Halikierra has not asserted negligence claims. It has asserted constitutional claims. Binding precedent holds that constitutional claims for damages—often called *Corum* claims—belong in the state courts. *See Corum v. Univ. of N.C.*, 330 N.C. 761, 782 (1992) ("[I]in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution. . . . Therefore, the common law, which provides a remedy for every wrong, will furnish the appropriate action for the adequate redress of a violation of that right." (citation omitted)); *see also Craig*, 363

N.C. at 338–39; *Taylor v. Wake County*, 258 N.C. App. 178, 182 (2018), *appeal dismissed, discretionary review denied*, 371 N.C. 569.

24.     It appears that DHHS has belatedly acknowledged as much.     After Halikierra pointed to these precedents in its response brief, and after the Court ordered supplemental briefing, DHHS admitted that "the Industrial Commission jurisdiction is for claims of negligence, and not for intentional torts or claims of constitutional rights violations, which the Plaintiffs are asserting here."     (DHHS Suppl. Br. 7, ECF No. 46.)

### 3. *Sovereign Immunity*

25.     In its initial briefs, DHHS did not assert sovereign immunity as a defense. In its supplemental brief, DHHS contends that "this is an intentional tort claim disguised as a constitutional rights violation" and that DHHS is therefore immune from suit.  (DHHS Suppl. Br. 7.)  But "[i]t is well established that sovereign immunity does not protect the state or its counties against claims brought against them directly under the North Carolina Constitution." *Peverall v. County of Alamance*, 154 N.C. App. 426, 430 (2002); *see also Corum*, 330 N.C. at 786 (holding that "when there is a clash between these constitutional rights and sovereign immunity, the constitutional rights must prevail").  Sovereign immunity is therefore not a basis to dismiss the claims.

### 4. *Adequate State Remedy*

26.     A *Corum* claim is available only "in the absence of an adequate state remedy." *Corum*, 330 N.C. at 782.  The "definition of adequacy is twofold: (1) that the

remedy addresses the alleged constitutional injury, and (2) that the remedy provides the plaintiff an opportunity to enter the courthouse doors." *Taylor*, 258 N.C. App. at 185 (cleaned up); *see also Rousselo v. Starling*, 128 N.C. App. 439, 447–48 (1998).

27. The complaint alleges that Halikierra has no adequate remedy at state law to redress the arbitrary and unconstitutional imposition of prepayment review. (*See* Compl. ¶¶ 124, 137.) DHHS did not dispute these allegations in its opening brief or reply brief.

28. At the hearing, however, DHHS argued for the first time that Halikierra has adequate state remedies that preclude its direct constitutional claims for damages. This issue was the subject of supplemental briefing. DHHS now argues that the claims against Cox, Piggott, and CCME are adequate state remedies because they involve the same "alleged harm" and "alleged damages" as the constitutional claims. (DHHS Suppl. Br. 8–9.) Halikierra objects, calling this an "incomprehensible position." (Pls.' Suppl. Br. 10.)

29. The Court concludes that it would be premature to dismiss the *Corum* claims on this basis. In theory, the claims against Cox, Piggott, and CCME could serve as adequate state remedies. Our appellate courts have held that the "adequacy of a state law remedy depends upon the injury alleged by a plaintiff, rather than upon the party from whom a plaintiff seeks recovery." *Taylor*, 258 N.C. App. at 188. But that is only part of the inquiry. To be adequate, an alternative remedy must be available and accessible to the plaintiff. *See, e.g.*, *Taylor*, 258 N.C. App. at 183.[1] The answer

---

[1] *See also, e.g.*, *Craig*, 363 N.C. at 342 (holding state law claim was inadequate because it was "entirely precluded by the application of the doctrine of sovereign immunity"); *Midgett v. N.C.*

to that question, which DHHS does not address, isn't obvious.  The claims against CCME, for example, are based on its own conduct, not on DHHS's decision to put Halikierra on prepayment review.  And the claim against Cox and Piggott for conspiracy in restraint of trade typically involves "an agreement between multiple *market participants* intending to illegally hinder trade or commerce." *Preiss v. Wine & Design Franchies, LLC*, 2018 NCBC LEXIS 99, at *28 (N.C. Super. Ct. Sept. 24, 2018) (citing N.C.G.S. § 75-1) (emphasis added).  Whether the statute applies to Cox and Piggott, as government officials, is not yet before the Court.

30.    Therefore, the Court cannot conclude at this stage that Halikierra has an adequate state law remedy so as to bar the *Corum* claims.  This is without prejudice to DHHS's right to revisit the issue on a more fully developed record.

*5. Exhaustion of Administrative Remedies*

31.    The availability of an adequate administrative remedy can also bar a *Corum* claim.  *See Taylor*, 258 N.C. App. at 185 (citing *Copper*, 363 N.C. at 789).  In general, "where the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." *Presnell v. Pell*, 298 N.C. 715, 721 (1979) (citations omitted).  But a plaintiff need not exhaust its administrative remedies if those remedies would be futile or inadequate.  *See Abrons Fam. Prac. & Urgent Care, PA v. N.C. Dep't of Health*

---

*State Highway Comm'n*, 260 N.C. 241, 249–51 (1963) (holding plaintiffs had no adequate remedy at law because their damages accrued after the time by which they could bring a statutory claim), *overruled on other grounds by Lea Co. v. N.C. Bd. of Transp.*, 308 N.C. 603 (1983); *Copper v. Denlinger*, 363 N.C. 784, 789 (2010) (holding plaintiffs had an adequate remedy in the form of an administrative appeal).

*& Hum. Servs.*, 370 N.C. 443, 451 (2018). A remedy is adequate if "it is calculated to give relief more or less commensurate with the claim." *Swan Beach Corolla, L.L.C. v. County of Currituck*, 234 N.C. App. 617, 622 (2014) (citation and quotation marks omitted). The plaintiff bears the burden of establishing futility or inadequacy. *See Abrons*, 370 N.C. at 451 (citation omitted).

32. Again, the complaint alleges that Halikierra has exhausted all administrative remedies. (*See* Compl. ¶¶ 123, 136.) And again, DHHS did not dispute these allegations in its opening brief or reply brief.

33. At the hearing, the parties informed the Court that there are two ongoing proceedings before the OAH involving (i) DHHS's suspension of Halikierra and (ii) DHHS's refusal to pay Halikierra's clean claims even after the suspension was rescinded. (*See* DHHS Suppl. Br. 10; *see also* ECF Nos. 46.2, 46.3.) By statute, adverse determinations by DHHS constitute contested cases that must be adjudicated by the OAH under the Administrative Procedure Act. *See* N.C.G.S. § 108C-12(b).

34. DHHS argues that this is an effective administrative remedy, which has not yet been exhausted. The Court disagrees. Halikierra's constitutional claims are based on the allegedly arbitrary decision to put it on prepayment review in the first place. (*See, e.g.*, Compl. ¶¶ 20–23, 29, 45, 46, 54; *see also* Pls.' Suppl. Br. 3, 14.) That decision is distinct from the denial of claims and is not reviewable under the Administrative Procedure Act. *See* N.C.G.S. § 108C-7(f) ("The decision to place or maintain a provider on prepayment claims review does not constitute a contested

case under Chapter 150B of the General Statutes. A provider may not appeal or otherwise contest a decision of the Department to place or maintain a provider on prepayment review."). Therefore, Halikierra has no adequate administrative remedy to address the decision to place it on prepayment review. *See Monarch Tax Credits*, 2021 NCBC LEXIS 9, at \*19 (concluding that plaintiff's *Corum* claim was "not barred by [plaintiff's] failure to exhaust administrative remedies because [plaintiff] as a practical matter does not have an administrative remedy which might address the issues its *Corum* claim raises").

35. DHHS argues that because section 108C-7(f) makes the decision to place a provider on prepayment review nonreviewable, Halikierra may not challenge that decision at all and has suffered no injury from it. (*See* DHHS Suppl. Br. 9–12.) Not so. The mere fact that an agency action is nonreviewable under the Administrative Procedure Act does not shield it from judicial review. *See* N.C.G.S. § 150B-43 ("Nothing in this Chapter shall prevent any party or person aggrieved from invoking any judicial remedy available to the party or person aggrieved under the law to test the validity of any administrative action not made reviewable under this Article."); *see also Kane v. N.C. Tchrs.' & State Emps.' Comprehensive Major Med. Plan*, 229 N.C. App. 386, 390 (2013); *High Rock Lake Ass'n Inc. v. N.C. Env't Mgmt. Comm'n*, 51 N.C. App. 275, 278 n.\* (1981); *High Rock Lake Ass'n Inc. v. N.C. Env't Mgmt. Comm'n*, 39 N.C. App. 699, 707 (1979). Because Halikierra has asserted injuries relating to DHHS's placement of Halikierra on prepayment review, (*see, e.g.*, Compl.

¶¶ 21–28, 54–58, 81, 82, 115–20, 124–28, 132–34, 137–44), the exhaustion doctrine does not preclude the claims.

### 6. *Failure to State a Claim*

36. DHHS also argues that Halikierra has failed to adequately plead a substantive due process or equal protection claim under Rule 12(b)(6).

37. The Law of the Land Clause of the North Carolina Constitution provides that "[n]o person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. It is "synonymous with 'due process of law,' a phrase appearing in the Federal Constitution and the organic law of many states." *State v. Ballance*, 229 N.C. 764, 769 (1949) (citations omitted); *see also Johnston v. State*, 224 N.C. App. 282, 296 (2012).

38. Substantive due process requires that "the law shall not be unreasonable, arbitrary or capricious, and that the law be substantially related to the valid object sought to be obtained." *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 181 (2004) (citation and quotation marks omitted). If the government action at issue implicates a fundamental liberty or property interest, then it receives strict scrutiny; otherwise, "the government action need only have a rational relation to a legitimate governmental objective to pass constitutional muster." *Toomer v. Garrett*, 155 N.C. App. 462, 469 (2002) (citing *Huntington Props., LLC v. Currituck County*, 153 N.C. App. 218, 229–31 (2002)).

39. The Equal Protection Clause of the North Carolina Constitution provides that "[n]o person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin." N.C. Const. art. I, § 19. The clause "require[s] that all persons similarly situated be treated alike." *State v. Harris*, 242 N.C. App. 162, 166 (2015) (quoting *State v. Fowler*, 197 N.C. App. 1, 26 (2009)).

40. Typically, equal protection rights arise in the context of "discrimination on the basis of group classification or interference with the exercise of some fundamental right." *Toomer*, 155 N.C. App. at 476. Halikierra's theory is different. It contends that DHHS's conduct was "a spiteful effort to force . . . Halikierra out of business." (Compl. ¶ 140.) An equal protection claim may be brought by a "class of one" if the plaintiff alleges (1) that the government intentionally treated the plaintiff differently than other similarly situated persons and (2) that the government's action was irrational and wholly arbitrary. *See Toomer*, 155 N.C. App. at 476–78; *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

41. DHHS's sole argument for dismissal under Rule 12(b)(6) is that the complaint does not and cannot allege arbitrary action by the agency. (*See* DHHS Br. in Supp. 5–6.) DHHS draws on Halikierra's allegations that section 108C-7 is vague, does not provide sufficient guidance, and does not define key terms. (*See, e.g.*, Compl. ¶¶ 98, 100, 101.) If true, DHHS's argument goes, then it could not have acted arbitrarily because it "was handed . . . a deeply flawed statute." (DHHS Br. in Supp. 5.)

42. This argument, like many of the other arguments asserted by DHHS, appears to be based on the facial challenge to section 108C-7, which Halikierra has withdrawn. DHHS contends that the allegations of vagueness remain in the complaint and therefore must be taken as true. That's not correct. The Court need not accept "conclusions of law" as true for purposes of a Rule 12(b)(6) motion. *Wray*, 370 N.C. at 46 (citations and quotation marks omitted).

43. Moreover, the complaint includes allegations of wrongdoing that are distinct from those based on statutory vagueness. These include allegations that DHHS targeted Halikierra out of spite, placed it on prepayment review without any supporting evidence, and held it to a different standard than other providers. (*See, e.g.*, Compl. ¶¶ 109–20, 131, 133, 134, 139, 140.) "[I]t is clear that 'government actors cannot single out a particular individual or entity for disparate treatment based on illegitimate, political or personal motives.'" *Town of Beech Mountain v. Genesis Wildlife Sanctuary, Inc.*, 247 N.C. App. 444, 461 (2016) (quoting *Browning-Ferris Indus. of S. Atl., Inc. v. Wake County*, 905 F. Supp. 312, 321 (E.D.N.C. 1995)).

44. In its supplemental brief, DHHS suggests for the first time that the complaint is also deficient because Halikierra has not pleaded a case of *respondeat superior* so as to attribute the actions of Cox and Piggott to DHHS. (*See* DHHS Suppl. Br. 7.) This was not one of the issues on which the Court invited supplemental briefing, so DHHS's argument is not properly before the Court. *See In re Southeastern Eye Center-Pending Matters*, 2019 NCBC LEXIS 29, at \*149 (N.C. Super. Ct. May 7, 2019) (declining to consider arguments in supplemental brief that

were outside the scope of the allowed supplemental briefing); *State v. Maready*, 205 N.C. App. 1, 14 n.4 (2010) (same).

\* \* \*

45. Because Halikierra has withdrawn the facial challenge to section 108C-7, the Court dismisses it. In all other respects, the Court denies DHHS's motion to dismiss.

### B. Claims Against CCME, Cox, and Piggott

46. CCME has moved under Rule 12(b)(6) to dismiss all claims against it. Cox and Piggott join CCME's challenges to the claims for civil conspiracy and punitive damages but have not advanced any arguments of their own. (*See* ECF No. 29.) For simplicity, the Court refers only to CCME when addressing the briefs and arguments.[2]

### 1. *Fraud*

47. CCME contends that the fraud claim is deficient because, as alleged, it made no misrepresentations to Halikierra. (*See* CCME Br. in Supp. 3–5, ECF No. 16.) In

---

[2] Although CCME is not a party to the OAH matters, it contends that those proceedings address issues that overlap with this case such that the OAH's decisions are "likely to extinguish or resolve many of the factual allegations in the Complaint which concern CCME." (CCME Suppl. Br. 6, ECF No. 49.) But nothing in Chapter 108C or the Administrative Procedure Act enables Halikierra to seek recovery against CCME for the injuries CCME has allegedly caused. What's more, Halikierra has alleged wrongdoing by CCME separate and apart from DHHS's actions at issue in the OAH matters. For example, CCME is accused of falsifying records and audit results it sent to DHHS and deceiving Halikierra about the purpose of various requests for information. (*See, e.g.*, Compl. ¶¶ 28, 33–36, 44, 64, 65, 67–71, 162–65, 167–71.) Given that the OAH matters do not encompass these issues, the exhaustion requirement does not apply to Halikierra's claims against CCME.

response, Halikierra has conceded the point and agreed to withdraw the claim. (*See* Opp'n to CCME Mot. 22, ECF No. 21.) The Court therefore dismisses the fraud claim.

2. *Section 75-1.1*

48. The elements of a claim under section 75-1.1 are that "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656 (2001) (citation omitted). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." *Id.* (citation omitted).

49. According to CCME, the only acts that it allegedly took were to perform the prepayment review and to inform DHHS of criminal background checks received from Halikierra. These acts, CCME contends, were legal and therefore not unfair or deceptive. *See* N.C.G.S. § 108C-7(a) ("In order to ensure that claims presented by a provider for payment by the Department meet the requirements of federal and State laws and regulations and medical necessity criteria, a provider may be required to undergo prepayment claims review by the Department."); N.C.G.S. § 131E-265(a) (addressing the use and disclosure of "criminal history record check" results).[3] On that basis, CCME seeks to dismiss the claim. (*See* CCME Br. in Supp. 5–8.)

---

[3] Section 131E-265(a) provides, in relevant part:

> An offer of employment by a home care agency licensed under this Chapter to an applicant to fill a position that requires entering the patient's home is conditioned on consent to a criminal history record check of the applicant. . . . [T]he Department of Public Safety shall return the results of national criminal history record checks for employment positions . . . to the Department of Health and Human Services, Criminal Records Check Unit[, which] . . . shall notify the nursing home or home

50.    This is a misreading of the claim and supporting allegations.  Although not always as clear as it could be, the complaint alleges unfair or deceptive acts that go beyond the purportedly lawful acts identified by CCME.  Liberally construed, the complaint alleges that CCME colluded with Cox and Piggott, intentionally inflated the number of convicted felons employed by Halikierra, and falsified data while performing the prepayment review, all with an aim toward disqualifying Halikierra as a Medicaid provider.  (*See, e.g.*, Compl. ¶¶ 28, 29, 33–37, 66–71, 161–71.)  The complaint also alleges that CCME had a financial motive for doing so because its compensation is tied to the denial of claims under review.  (*See, e.g.*, Compl. ¶¶ 161–63.)  Taking these allegations as true, Halikierra has sufficiently alleged that CCME committed unfair or deceptive acts.

51.    With its supplemental brief, CCME submitted evidence to disprove these allegations and show that it did not falsify data.  (*See* CCME Suppl. Br. 7–10; ECF No. 49.3.)  But the Court is confined to the pleadings on a Rule 12(b)(6) motion.  CCME's evidence is better suited for summary judgment.

52.    The Court denies CCME's motion to dismiss the section 75-1.1 claim.

3.  *Civil Conspiracy*

53.    To state a claim for civil conspiracy, a plaintiff must allege "(1) a conspiracy; (2) wrongful actions taken by at least one of the conspirators in furtherance of that

---

care agency as to whether the information received may affect the employability of the applicant.  In no case shall the results of the national criminal history record check be shared with the nursing home or home care agency. . . . All criminal history information received by the home or agency is confidential and may not be disclosed, except to the applicant as provided in subsection (b) of this section.

conspiracy; and (3) injury to the plaintiff as a result." *Lunsford v. ViaOne Servs., LLC*, 2020 NCBC LEXIS 111, at *17 (N.C. Super. Ct. Sept. 28, 2020) (citing *Krawiec v. Manly*, 370 N.C. 602, 614 (2018)). Conspiracy "requires an agreement between at least two persons to take an unlawful action or to take a lawful action in an unlawful manner." *Id.* (citations omitted).

54. CCME argues that Halikierra has not alleged the existence or terms of any conspiracy. (*See* CCME Br. in Supp. 9.) But it has. The complaint alleges that Cox and Piggott "solicited and obtained the help of" CCME in a "scheme to destroy [Halikierra's] business," that CCME falsely reported the number of convicted felons employed by Halikierra, and that CCME falsified its audit findings at Piggott's request. (Compl. ¶¶ 29, 67, 68, 153.) The complaint also identifies the CCME employee who communicated with and assisted Cox and Piggott in this scheme. (*See* Compl. ¶ 30.) And it provides the timeframe during which this all occurred. (*See, e.g.*, Compl. ¶¶ 64–70.) Taking these allegations as true, Halikierra has set forth "not only that [CCME, Cox, and Piggott] entered into an agreement but also . . . when the agreement happened, how it arose, and its purpose." *Lunsford*, 2020 NCBC LEXIS 111, at *17–18 (denying motion to dismiss); *see also Glob. Textile All., Inc. v. TDI Worldwide, LLC*, 2018 NCBC LEXIS 159, at *27–29 (N.C. Super. Ct. Nov. 29, 2018) (same); *S. Fastening Sys., Inc. v. Grabber Constr. Prods., Inc.*, 2015 NCBC LEXIS 42, at *19–21 (N.C. Super. Ct. Apr. 28, 2015) (same).

55. CCME also argues that the civil conspiracy claim must be dismissed if the underlying substantive claims are dismissed. (*See* CCME Br. in Supp. 10.) But the

Court has denied the motion to dismiss the section 75-1.1 claim, and no party has challenged the underlying claim for conspiracy in restraint of trade.

56. The Court denies the motions of CCME, Cox, and Piggott to dismiss the claim for civil conspiracy.

### 4. *Punitive Damages*

57. CCME argues that punitive damages are a remedy rather than a standalone cause of action. (*See* CCME Br. in Supp. 10.) This is true. *See, e.g.*, *Azure Dolphin*, 2017 NCBC LEXIS 90, at \*29. Accordingly, the Court dismisses the purported claim for punitive damages without prejudice to Halikierra's right to seek punitive damages as a remedy for its surviving claims, if allowed by law. *See Aldridge v. Metro. Life Ins. Co.*, 2019 NCBC LEXIS 116, at \*146 (N.C. Super. Ct. Dec. 31, 2019).

IV.
CONCLUSION

58. For all these reasons, the Court **ORDERS** as follows:

a. The Court **DISMISSES** Whitley and Scales as parties to this action, without prejudice, under Rule 21.

b. DHHS's motion to dismiss is **GRANTED in part** and **DENIED in part**. The facial challenge to the constitutionality of section 108C-7 is **DISMISSED** without prejudice. In all other respects, the motion is **DENIED**.

c. CCME's motion to dismiss is **GRANTED in part** and **DENIED in part**. The claim for fraud is **DISMISSED** without prejudice. The claim for punitive damages is **DISMISSED** without prejudice to Halikierra's

right to seek punitive damages as a remedy for its surviving claims, if allowed by law. In all other respects, the motion is **DENIED**.

d. Cox and Piggott's motion to dismiss is **GRANTED in part** and **DENIED in part**. The claim for punitive damages is **DISMISSED** without prejudice to Halikierra's right to seek punitive damages as a remedy for its surviving claims, if allowed by law. In all other respects, the motion is **DENIED**.

**SO ORDERED**, this the 25th day of March, 2021.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
  for Complex Business Cases